UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TRACY L. HECKATHORNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:11-CV-00323 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Tracy Heckathorne appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

### I.  PROCEDURAL HISTORY

Heckathorne applied for SSI on September 5, 2008, alleging that she became disabled as of September 28, 2007. (Tr. 10, 125-28.)  The Commissioner denied her application initially and upon reconsideration, and Heckathorne requested an administrative hearing. (Tr. 78-79, 90-91.) On April 1, 2010, Administrative Law Judge ("ALJ") Jennifer Fisher conducted a hearing at which Heckathorne, who was represented by counsel; her husband; and a vocational expert ("VE") testified. (Tr. 27-75.)

On September 16, 2010, the ALJ rendered an unfavorable decision to Heckathorne,

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

concluding that she was not disabled despite the limitations caused by her impairments because she could perform a significant number of jobs in the national economy. (Tr. 10-21.)  The Appeals Council denied Heckathorne's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.)

Heckathorne filed a complaint with this Court on September 14, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.)  Her sole argument in this appeal is that the ALJ erred in finding that she did not meet the "deficits in adaptive functioning" requirement for Listing 12.05C, mental retardation. (Mem. in Supp. of Pl.'s Mot. for Summ. Reversal 8-12.)

## II.  FACTUAL BACKGROUND[2]

### A.  Background

At the time of the ALJ's decision, Heckathorne was thirty-nine years old and had an eighth-grade education, which included special education classes for assistance with reading and mathematics. (Tr. 21, 35, 125, 154.)  She had no past relevant work experience but did deliver newspapers for one year, and for brief periods of time cleaned at a hotel, made awnings at a manufacturer, and worked as an aide to disabled people teaching them basic life skills. (Tr. 36-37, 150.)  She alleges in her SSI application that she became disabled due to back pain, leg numbness, carpal tunnel syndrome, a torn rotator cuff, and depression. (Tr. 149.)  Because Heckathorne does not challenge the ALJ's consideration of her physical impairments, the Court will focus on the evidence pertaining to her mental limitations.

### B.  Heckathorne's Testimony at the Hearing

At the hearing, Heckathorne testified that she lives with her husband and seventeen-year-

---

[2] In the interest of brevity, this opinion recounts only the portions of the 526-page administrative record necessary to the decision.

old daughter. (Tr. 38, 47-48.) She is able to independently care for her personal needs such as dressing and bathing and drives to familiar places two to three times a week but occasionally gets lost in unfamiliar places. (Tr. 39, 42, 50.) She can perform basic reading, writing, and math. (Tr. 35.) She and her husband both take care of the bills, but she cannot balance a checkbook; she uses a calculator or a state assistance card when shopping, and her husband usually accompanies her. (Tr. 38, 40.) Crowded stores cause her anxiety, and therefore she usually shops late at night with a family member. (Tr. 51.) Heckathorne reported that she can follow simple instructions, such as a recipe to bake a cake, but can easily become distracted when doing so. (Tr. 51-52, 63.)

When asked to describe her typical day, Heckathorne reported that she sleeps most of the time because her medications cause her fatigue. (Tr. 48.) She also performs household chores such as laundry and dishes, but is limited to some extent by her back pain. (Tr. 48.) She spends four to five hours every day playing "puzzle games" on her computer, checking e-mail, and reading the news and weather reports. (Tr. 52-53, 62-63.)

As to her past work, Heckathorne testified that it took her six months to learn her paper route and that either her husband or daughter went with her every day. (Tr. 39.) When asked why she left her job caring for the disabled, Heckathorne cited "emotional issues" related to her depression and anxiety. (Tr. 36.) When asked whether she could do all of the tasks she taught the disabled, including how to cook, clean, do laundry, sweep, mop, and grocery shop, Heckathorne responded: "Some days I can, some days I can't because I have a lot of back pain." (Tr. 36.)

Heckathorne's husband also testified at the hearing. When asked whether he thought his wife could live by herself, he responded in the negative, commenting that she would have the most trouble with cleaning tasks. (Tr. 64.) He also said that he has "to do all the math" and must check his wife's calculations. (Tr. 64.) He elaborated that she gets anxious and angry when she cannot complete a task on her own. (Tr. 64.)

### C. Summary of the Medical Evidence

As a child, Heckathorne was enrolled in the Northeast Indiana Special Education Mildly Mentally Handicapped program. (Tr. 273-320.) In September 1980, when Heckathorne was nine years old, intelligence testing indicated that she had a verbal IQ of 68, a performance IQ of 73, and a full scale IQ of 69. (Tr. 313-14.) Heckathorne's IQ was tested again in September 1983, resulting in an verbal IQ of 65, a performance IQ of 75, and a full scale IQ of 69. (Tr. 289.)

In April 1983, when she was eleven years old, Heckathorne took an ABS AAMD Adaptative Behavior Scale School Edition ("ABS AAMD") test to determine eligibility for placement in a special education class for the mildly mentally handicapped. (Tr. 303.) Apparently, Heckathorne's scores had been within the range to qualify her for placement in that classroom on a previous test, but teachers opted to keep her in the regular classroom because she was making appropriate-enough achievement at the time. (Tr. 303.) The ABS AAMD results revealed "a rather consistent picture of tested ability and observed ability functioning in the lower ranges in reference to her chronological age." (Tr. 289.) Specifically, she scored below her chronological age in community self-sufficiency, personal-social responsibility, socialization, and the domains of self-direction and responsibility. (Tr. 303.) "Her overall comparison score suggest[ed] that she functions like a slow learner in a regular classroom

setting." (Tr. 303.)

On November 11, 2008, Heckathorne underwent a psychological examination at New Beginnings Psychological Services at the request of the state agency. (Tr. 377-83.) She told the examiner that she had never been diagnosed with depression or received any mental health treatment or medication. (Tr. 377.) She came alone to the appointment, commenting that she drove herself twenty-five miles without difficulty. (Tr. 380.) She told the examiner that she manages the money at home and that this has never been a problem for her. (Tr. 379.) Her judgment appeared adequate but her insight poor and motor activity somewhat slow; she cried during the examination. (Tr. 380-81.) Neal Davidson, Ph.D., diagnosed Heckathorne with major depressive disorder, single episode, mild, and rule out borderline intellectual functioning; he assigned her a Global Assessment of Functioning ("GAF") score of 57.[3] (Tr. 382.) He opined that she was able to understand, remember, and carry out simple instructions; make simple work-related decisions; and adapt to change; but that she appeared limited to concrete tasks. (Tr. 382.)

On January 15, 2009, Heckathorne returned to New Beginnings for an IQ test, reporting a new onset of panic attacks and new medications. (Tr. 391-92.) Her verbal IQ was 66, borderline performance IQ 70, and full range IQ 65. (Tr. 392.) Dr. Davidson thought the scores appeared "consistent with observation and [Heckathorne's] report, and should be accepted as a

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 31 to 40 reflects some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., avoids friends, neglects family, and is unable to work). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id*. A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

5

valid indicator of her current cognitive functioning." (Tr. 392.)  He assigned her a diagnosis of cognitive disorder NOS, commenting that because school or other corroborating records from the developmental period were not available, mental retardation could not be diagnosed. (Tr. 392.) He further opined: "Based on today's examination, Tracy is able to understand, remember, and carry out instructions, is able to make simple work related decisions, and is able to adapt to change.  She is limited to simple, concrete, and routine tasks." (Tr. 392.)

Also in January 2009, Maura Clark, Ph.D., a state agency psychologist, reviewed Heckathorne's record and concluded that she had a mild restriction in activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, or pace. (Tr. 403.)  More specifically, she found that Heckathorne was "not significantly limited" in sixteen of twenty categories involving understanding and memory, sustained concentration and persistence, social interaction, and adaption, and that Heckathorne was "moderately limited" in following detailed instructions, completing a normal workday without interruption from psychologically-based symptoms, and interacting with the general public. (Tr. 407-08.)  Dr. Clark concluded that Heckathorne had the capacity to understand, remember, and follow simple instructions and that she could perform "simple, routine, repetitive, concrete, tangible tasks." (Tr. 409.)

The following month, Heckathorne's general practitioner prescribed her Zoloft for depression. (Tr. 430.)  On January 26, 2010, Heckathorne was referred by her attorney to the Northeastern Center for evaluation. (Tr. 452.)  The examiner diagnosed her with a generalized anxiety disorder and assigned her a GAF of 38. (Tr. 452.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id.*  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

### IV.  ANALYSIS

#### A.  *The Law*

Under the Act, a plaintiff is entitled to SSI if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Heckathorne is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required her to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

## B. The ALJ's Decision

On September 16, 2010, the ALJ rendered her opinion. (Tr. 10-21.) She found at step one of the five-step analysis that Heckathorne had not engaged in substantial gainful activity since her application date. (Tr. 12.) At step two, she found that Heckathorne had the following severe impairments: depression, anxiety, left rotator cuff tear, hypertension with edema, asthma, mild lumbar and thoracic degenerative disk disease, borderline intellectual functioning, and

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

8

obesity. (Tr. 12.)  At step three, she determined that Heckathorne's impairment or combination of impairments did not meet or equal a listing. (Tr. 12-13.)  Before proceeding to step four, the ALJ found Heckathorne's subjective complaints not credible to the extent they were inconsistent with the following RFC (Tr. 14):

> [T]he claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently.  In an eight-hour period, she is able to sit or stand/walk for a total of four to six hours each but she must periodically alternate between sitting and standing while at the workstation and attending to work tasks.  In addition, the claimant is only occasionally able to push or pull levers/controls with her left upper extremity.  She is only occasionally able to climb, balance, stoop, kneel, crouch, and crawl.  Furthermore, the claimant is only occasionally able to reach overhead with her left upper extremity.  She is frequently but not constantly able to reach in other directions with her left upper extremity and perform gross and fine finger manipulative movements bilaterally.  The claimant must avoid even moderate exposure to pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation, and chemicals.  She is not able to understand, remember, or carry out detailed instructions.  She is limited to simple, routine, repetitive tasks that do not involve fast-paced production requirements, more than simple work-related decisions, more than a few (if any) workplace changes, or more than superficial interaction with the public, supervisors, and co-workers, meaning that she is able to work primarily with things and not people.

(Tr. 13.)

At step four, the ALJ found that Heckathorne had no past relevant work. (Tr. 19.)  Based on the assigned RFC and the vocational expert's testimony, the ALJ then concluded at step five that Heckathorne could perform a significant number of other jobs within the national economy, including production inspector, shipping and receiving clerk, and packager. (Tr. 20.)  Therefore, Heckathorne's claim for SSI was denied. (Tr. 21.)

### C. *The ALJ's Step Three Finding that Heckathorne Did Not Meet or Equal a Listing Is Supported by Substantial Evidence*

Heckathorne argues that the ALJ erred at step three by concluding that she did not meet or equal the requirements of Listing 12.05C, the mental retardation listing.  Heckathorne's

argument, however, fails to warrant a remand of the Commissioner's final decision.

The introduction to the mental impairment listings states: "If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00A (emphasis added); *see Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006); *Scott v. Barnhart*, 297 F.3d 589, 595 n.6 (7th Cir. 2003); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 579 (7th Cir. 2003). Specifically, the diagnostic description set forth in Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt P, App. 1 § 12.05; *see Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007).

Thus, Heckathorne must satisfy the requirements of the foregoing diagnostic description *in addition to* the specific requirements articulated in Listing 12.05C, which are "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt P, App. 1 § 12.05; *see Novy*, 497 F.3d at 709; *Mendez*, 439 F.3d at 362; *Smallwood v. Astrue*, No. 2:08-cv-85, 2009 WL 2475272, at *8 (N.D. Ind. Aug. 11, 2009). The Seventh Circuit Court of Appeals has explained: "[A] low IQ, but not an IQ below 60, is insufficient, even with the presence of some impairment, to establish disability per se on grounds of mental retardation. The reason is that persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job." *Novy*, 497 F.3d at 709 (citations omitted).

The parties do not dispute that Heckathorne's IQ scores are within the requirements of

Listing 12.05C and that she has a physical or mental impairment that imposes additional and significant work-related limitation of function. *See Elster v. Barnhart*, No. 01 C 4085, 2003 WL 124432, at *5 (N.D. Ill. Jan. 13, 2003) (articulating that a finding that the claimant has a "severe" impairment at step two satisfies the second requirement of Listing 12.05C of an additional physical or mental impairment that imposes significant work-related limitation of function). Rather, Heckathorne challenges the ALJ's finding that she does not have deficits in adaptive functioning consistent with the introductory paragraph of Listing 12.05.

In that vein, Heckathorne argues in her opening brief that the ALJ erred when considering her adaptive functioning because he focused on her activities as an adult and did not mention the results of the ABS AAMD that she underwent as a child. (Mem. in Supp. 10.) According to Heckathorne, "the Listing only refers to deficits in adaptive functioning *prior to the age of 22*" and thus evidence of adaptive functioning, or lack thereof, as an adult is irrelevant. (Mem. in Supp. 10 (emphasis added).)

Heckathorne's interpretation of the Listing's language, however, is too narrow. In *Novy*, 497 F.3d at 710, the Seventh Circuit specifically relied upon the claimant's activities as an adult when considering her adaptive functioning:

> The key term in the introductory paragraph of section 12.05 in the regulation, so far as bears on this case, is "deficits in adaptive functioning." The term denotes inability to cope with the challenges of ordinary everyday life. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSMIV-TR)* 42 (4th ed. 2000). If you cannot cope with those challenges, you are not going to hold down a full-time job. In the case of Novy, however, the administrative law judge was on firm ground in finding that she can cope. She lives on her own, taking care of three children . . . without help, feeding herself and them, taking care of them sufficiently well that they have not been adjudged neglected and removed from her custody by the child-welfare authorities, paying her bills, [and] avoiding eviction. Her intellectual limitations pose serious challenges to her ability to raise a family on her own. But she has

11

>overcome those challenges well enough that she should be able to hold down a full-time job—or so at least the administrative law judge was entitled to conclude without courting reversal.

(internal citation omitted). Similarly, several courts have even articulated the requirements of the introductory paragraph of Listing 12.05 as follows: "To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009) (unpublished); *accord Jessie v. Astrue*, No. 8:09-cv-1546, 2010 WL 2427095, at *3 (M.D. Fla. June 16, 2010); *Vaughn v. Astrue*, 494 F. Supp. 2d 1269, 1273 (N.D. Ala. 2007). Thus, Heckathorne's contention that Heckathorne's activities as an adult are irrelevant is wholly without support.

Perhaps recognizing the vulnerability of her initial assertion, Heckathorne's argument shifts slightly in her two-page reply brief. There, she contends that the ALJ erred simply by failing to discuss the ABS AAMD results or mention developmental deficits in her decision. (Pl.'s Reply to Def.'s Mem. 1.) But again Heckathorne's argument falls short. An ALJ "need not provide a written evaluation of every piece of evidence that is presented." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citation omitted). Rather, the ALJ must only "minimally articulate . . . her justification for rejecting or accepting specific evidence of disability." *Id*. (citation omitted); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (emphasizing that an ALJ need not evaluate every piece of evidence in writing, but must sufficiently articulate the ALJ's assessment of the evidence to assure that the important evidence has been considered and that the ALJ's path of reasoning can be traced).

Here, the ALJ specifically discussed Heckathorne's school records in her decision, stating that they confirmed that Heckathorne "was in special education classes for a mild mental handicap." (Tr. 17.)  The ALJ then listed Heckathorne's IQ scores from 1980, 1983, and 2009 and stated that she was able to read at the grade 4.7 level and do math at the 3.3 level. (Tr. 17.)  Thus, although the ALJ did not specifically mention the ABS AAMD, there is no doubt that she considered the records submitted by Northeast Indiana Special Education, which included the IQ scores, reading and math levels, *and* the ABS AAMD results. (*See* Tr. 273-320.)

Furthermore, Heckathorne does not suggest with any particularity how the ABS AAMD results constitute "considerable evidence" counter to the ALJ's conclusion such that they rise to the level of an entire line of evidence that the ALJ inappropriately ignored. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) ("If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required.").  That is a single test score "is not a line of evidence, but more a point along the line of evidence of IQ testing and other indicia of Plaintiff's mental abilities." *Zamora v. Massanari*, No. 99 C 371, 2001 WL 766374, at *6, 13-14 (N.D. Ill. July 6, 2001).  The ALJ's explicit reference to Heckathorne's school records "demonstrates that the ALJ has considered the full spectrum of those points along the line." *Id*.

That is, Heckathorne fails to show how the ABS AAMD results could change the ALJ's assessment of her level of adaptive functioning. S*ee Mayes v. Astrue*, No. 1:07-cv-0193-DFH-TAB, 2008 WL 126691, at *6 (S.D. Ind. Jan. 10, 2008) (stating that the claimant bears the burden of showing that he meets Listing 12.05C).  Indeed, the ALJ's conclusion that she has the ability to "cope with the challenges of ordinary everyday life" is on firm ground. *Novy*, 497 F.3d at 710 (citing DSMIV-TR at 42).

As the ALJ catalogued, Heckathorne is able to drive; care for her personal needs; complete household tasks such as laundry, dishes, and cleaning; go grocery shopping; play "puzzle" games for hours each day on the computer; and read the news, monitor the weather, and check e-mail. (Tr. 12, 18, 158-59.) The ALJ also considered that Heckathorne's ability to do household chores was mainly limited by her physical complaints, not her cognition, and although she testified that she only drives alone in familiar places, the record indicates that she drove alone, without difficulty, to a consultative appointment more than twenty miles from her home. (Tr. 12-13, 17-18, 36, 193-94.) In fact, Heckathorne even obtained a job *teaching* basic life skills to disabled adults, which the ALJ noted she quit after two months due to her anxiety and depression, *not* because she could not cognitively perform the tasks. (Tr. 17-18, 36); *see Novy*, 497 F.3d at 710 (relying upon claimant's daily living activities, living circumstances, and work history when finding that she did not satisfy the "adaptive deficits" requirement of Listing 12.05(C)); *Burns v. Comm'r of Soc. Sec.*, No. 1:10-cv-42, 2011 WL 7568592, at *6-7 (E.D. Tenn. Sept. 7, 2011) (same); *Sherrod v. Astrue*, No. 10-c-451, 2011 WL 284349, at *12 (E.D. Wis. Jan. 25, 2011) (same).

Furthermore, as the ALJ emphasized, Heckathorne states that she can follow simple instructions and, although there is some inconsistency in testimony concerning her ability to independently manage funds, she can manage accounts and make change with no more than minimal oversight. (Tr. 17, 217.) Likewise, the ALJ observed that Dr. Davidson (and, for that matter, Dr. Clark as well) opined that Heckathorne has the ability to perform simple, repetitive tasks. (Tr. 18); *see generally Scheck*, 357 F.3d at 700 (stating that an ALJ may properly rely upon the opinion of the state agency physicians).

Considering the foregoing evidence, the ALJ's conclusion that Heckathorne did not have the "deficits in adaptive functioning" necessary to satisfy Listing 12.05C is supported by substantial evidence.  The ALJ minimally articulated her reasoning with respect to Heckathorne's school records, which included the ABS AAMD results, and those results do not rise to "an entire line of evidence" that would constitute a failure-to-articulate error by the ALJ. *Carlson*, 999 F.2d at 181.  Therefore, Heckathorne's sole argument does not warrant a remand of the Commissioner's final decision or an outright award of benefits, and thus the decision will be AFFIRMED.

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Heckathorne.

SO ORDERED.

Enter for this 9th day of July, 2012.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge